545 A.2d 882

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jay COLLINS, Appellee.**

Supreme Court of Pennsylvania.

Submitted April 15, 1988.

Decided Aug. 10, 1988.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Philadelphia, for appellant.

Mary Zell, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.

At issue in this appeal is an order of the Court of Common Pleas of Philadelphia County granting a new trial to appellee Jay Collins, following his non-jury conviction of

Aggravated Assault, Recklessly Endangering Another Person and Violation of the Uniform Firearms Act. The basis for the court's order was its conclusion that Collins had been denied effective assistance of counsel in the trial proceedings. When that order was affirmed by the Superior Court, in a memorandum opinion, 356 Pa.Super. 585, 512 A.2d 49 (1986), the Commonwealth petitioned this Court for an allowance of appeal, which we granted.

Although this appeal does not present a question as to the sufficiency of the Commonwealth's evidence to sustain the convictions, a recounting of that evidence is necessary to an understanding of the ineffective-assistance claim raised before the trial court.

In the early morning of June 21, 1983, Mrs. Margie Barfield was lying in bed watching television at her home in the Germantown section of Philadelphia. Between two and three o'clock that morning, she heard noises at the front of her house. Upon investigation, she discovered that her porch furniture had been thrown onto the adjacent sidewalk. Mrs. Barfield called the police, who helped her to return the furniture to the front porch. After the police left the scene, Mrs. Barfield and her daughter Diane remained at the front of the house, looking up and down the street. While the two females were thus stationed they saw a man walk by the house, a man Diane Barfield identified to her mother as Jay Collins, the appellee herein. Collins was from the neighborhood and was known to both of the Barfields. After the male had walked by, Mrs. Barfield's daughter went back into the house; but Mrs. Barfield herself remained at the front door.

A short time later, while Mrs. Barfield was standing in the doorway of her home, the mentioned male came back toward her residence. This time, according to Mrs. Barfield, the man stopped in front, drew from under his coat what appeared to be a rifle or shotgun, and aimed the weapon at her. When Mrs. Barfield started to retreat from the doorway, she heard a "tremendous blast." Shotgun pellets came within a few inches of her head, penetrated the

screen door and lodged in the wall of the foyer. According to later police testimony, between twenty-five and fifty shotgun pellets were found in the wall. Fortunately, Mrs. Barfield was not physically injured.

In reporting the shooting incident to the police, Mrs. Barfield identified her assailant as Jay Collins. She also provided them with a description of him as well as his address. About 7:00 a.m. the next day, June 22, 1983, the police arrested Collins at his home. The police also seized a blue trench coat, which they found in Collins' bedroom.

At trial, Diane Barfield, the victim's daughter, positively identified Jay Collins as the male who had walked past the front of the house shortly before the shooting. The victim, Mrs. Margie Barfield, was also positive in her identification of Collins as the shooter. In that regard, the elder Barfield disclosed that she had known the accused for several years and that he had gone to school with her children. She also pointed out that, when the accused aimed the weapon at her, he was standing no more than fifteen or twenty feet away and in lighting that enabled her to see him. As a further matter, she identified the coat seized by the police as being the one worn by the assailant.

The defense attempted to demonstrate, through cross-examination, that Mrs. Barfield was mistaken or unreliable in her identification of Collins as the shooter. Defense counsel also presented an alibi witness, one Glenn Price. Mr. Price testified that he and the accused were at a neighborhood bar until about 1:30 a.m. on the morning of the shooting, and that from the bar they proceeded to a friend's house to watch a video movie until about 3:00 a.m. At that time, according to Price, he and the accused departed the friend's house and headed toward their respective homes. The testimony of this witness also revealed that the house in which the movie was shown and the house in which Collins lived were both within two blocks of Mrs. Barfield's residence.

The trial judge, sitting as the factfinder, determined that the Commonwealth's witnesses were credible, and further,

that the Barfields were reliable in their identification of Jay Collins. The judge also found that the alibi witness, though credible, had not given testimony which precluded Collins from being the assailant. Consequently, the court adjudged the accused guilty of all charges.

Collins retained new counsel to press his post-trial motions. Included in the grounds advanced for a new trial was an assertion that Collins' trial counsel had been ineffective. That claim was predicated on the failure of trial counsel to impeach Mrs. Barfield, the Commonwealth's key witness, by bringing out on cross-examination that she had a particular reason to be biased or vengeful against the accused, arising from events that preceded the shooting incident of June 21, 1983. The source of this possible bias was the fact that, a few years before, Mrs. Barfield's son had been convicted and imprisoned for the shooting death of a cousin of Jay Collins, on the strength of testimony provided by Jay Collins' brother.

At the hearing on the ineffectiveness claim, Collins' former defense counsel admitted her pre-trial awareness of the homicide case involving Mrs. Barfield's son and that it could have been a source of vindictiveness toward the entire Collins family. That notwithstanding, trial counsel put forth two reasons for not attempting to impeach Mrs. Barfield on a theory of antecedent bias or hostility: First, counsel felt that Mrs. Barfield appeared to be a credible and sympathetic witness, and that a suggestion of vengeance-motivated testimony would have been unavailing. Second, counsel was of the view that reference to the homicide case could have worked as a "two-edged sword" against her client, in that it could have given him a motive to harm Mrs. Barfield. According to trial counsel, the fact that Mrs. Barfield's son shot and killed Jay Collins' cousin may have been perceived as motivating the instant appellee to do the same thing to a member of the Barfield family.

The trial court concluded that the election of trial counsel not to impeach Mrs. Barfield with an imputation of vengeance amounted to the abandonment of a meritorious

defense and, thus, constituted ineffective assistance of counsel. According to the trial court, that line of impeachment was the only possible basis for creating a reasonable doubt as to the defendant's guilt. From the order granting a new trial, the Commonwealth appealed to the Superior Court.[1]

The Superior Court, in affirming the trial court's decision, purported to apply our decision in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). The Superior Court opined that the revenge theory, which had an undisputed factual predicate, was the only possible means of impeaching the credibility of the prosecution's key witness, and that the decision not to pursue it could not be deemed reasonably designed to protect the accused's interests. As for trial counsel's explanation of her strategic choice, the Superior Court rejected it as being meritless under the circumstances. In this regard, the Superior Court reasoned that, since Mrs. Barfield seemed to be a credible and sympathetic witness, and had given testimony sufficient to convict the accused, the defense had little to lose in resorting to the vengeance theory as a basis for impeaching the witness' testimony. Moreover, in the Superior Court's view, the strategy forgone had a greater potential for success than the tactics counsel actually employed, *i.e.,* reliance on a theory of misidentification and alibi.

It is by now axiomatic that a defendant in a criminal case is entitled to effective representation at trial. Pa. Const. art. I, § 9; *Commonwealth v. Bunch,* 466 Pa. 22, 351 A.2d 284 (1976); *Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973); *Commonwealth ex rel. Washington v. Maroney, supra; see Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In resolving a claim of ineffective assistance of counsel, we have long followed the

1. As a general rule, an order granting a new trial is reviewable only for an abuse of discretion or an error of law. *E.g., Commonwealth v. White,* 482 Pa. 197, 393 A.2d 447 (1978); *Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Morales,* 458 Pa. 18, 326 A.2d 331 (1974). The question of whether the trial court correctly applied the controlling standard as to the effectiveness of counsel is one of law.

standard set forth in *Washington, supra.* In *Washington,* this Court observed that, in gauging the performance of an attorney at trial, the process must entail a comparison of the course adopted by counsel with the alternatives available. 427 Pa. at 603, 235 A.2d at 352. The Court then went on to provide what has become the guiding principle:

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis. (Emphasis in original.) 427 Pa. at 604–605, 235 A.2d at 352–353.

As a corollary to the above standard, the Court in *Washington* stated that "a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success *substantially greater* than the tactics actually utilized." *Id.,* 427 Pa. at 605 n. 8, 235 A.2d at 353 n. 8 (emphasis added).

 In considering a claim of ineffective assistance of counsel we must, of course, make an independent review of the record. As a threshold to applying the *Washington* test, we must first determine whether the abandoned defensive course arguably had merit. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). It is only when the tactic forgone is one of arguable merit that we must go further and assess counsel's reason for not pursuing it. *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Hubbard, supra.* In the instant case, the tactic not utilized by defense counsel was the impeachment of the prosecution's central witness, Mrs. Barfield, by imputing to her a vengeance motive for identifying Jay Collins as her assailant. Our law clearly establishes that any witness may be impeached by showing his

bias or hostility, or by proving facts which would make such feelings probable. *E.g., Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982); *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977); *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968). With regard to the witness in question, the undisputable fact that her son had been convicted and incarcerated, on the testimony of Jay Collins' brother, could have been perceived as a source of vindictiveness toward other members of the Collins family, including the present appellee. We conclude that the tactic not resorted to was one that had merit, at least as an abstract proposition. Consequently, we must now consider trial counsel's decision not to follow that means of impeachment.

A decision by counsel not to take a particular action does not constitute ineffective assistance if that decision was reasonably based, and was not the result of sloth or ignorance of available alternatives. *E.g., Commonwealth v. Blair*, 491 Pa. 499, 421 A.2d 656 (1980); *Commonwealth v. Hubbard*, 485 Pa. 353, 402 A.2d 999 (1979); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). Our review of the record in the present case convinces us that trial counsel fully considered the tactic of impeaching Mrs. Barfield according to a theory of revenge-rooted bias, but rejected that approach as being more harmful than beneficial to the defendant's position. As noted, it was trial counsel's judgment that the very same circumstances which might have infused Mrs. Barfield with an appetite for vengeance could have had the same effect on the defendant, and could have given him a motive for perpetrating the shotgun attack. Although the prosecution did not have to establish motive, such would be relevant and further evidence of guilt. *Commonwealth v. Gwaltney, supra.* In light of those considerations, trial counsel took the approach that Mrs. Barfield was an honest and sincere person but who was mistaken in her identification of the shooter. To reinforce that position, and in conjunction with it, counsel sought to prove that her client was elsewhere at the time of the shooting.

In our view, counsel's tactical decision to eschew the vengeance theory as a line of impeachment, and to proceed instead as she did, was a reasonably based approach designed to effectuate her client's interests. That being so, it is not for this Court, nor any other court, to substitute its determination as to which of various alternatives would have better promoted the client's interests. *Commonwealth v. Blair, supra; Commonwealth v. Roundtree,* 469 Pa. 241, 364 A.2d 1359 (1976). It is to be kept in mind that counsel's stewardship at trial is presumptively effective, and the burden of demonstrating that it was not rests upon the defendant. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981); *see Commonwealth ex rel. Washington v. Maroney, supra.* No such contrary showing has been made in this case.

For the reasons set forth herein, the order of the Superior Court is reversed. The order of the trial court granting a new trial is vacated, and the matter is remanded to the Court of Common Pleas for further proceedings consistent with this opinion.