J-S20001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                     : PENNSYLVANIA
                                                     :
             v.                           :
                                                     :
MICHAEL T. DURDEN             :
                                                     :
            Appellant          : No. 1173 MDA 2017

Appeal from the PCRA Order, entered June 30, 2017,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0001702-2013.

BEFORE: GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 21, 2018**

Michael T. Durden appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-9546. Appellant's counsel has filed a motion to withdraw. We affirm the order denying Appellant's post-conviction relief and grant counsel's motion.

The pertinent facts and procedural history have been summarized as follows:

> On the night of October 26, 2012, the Dollar General in the North York Shopping Plaza was robbed at gunpoint by a black male. Two employees, Christie Clark and Terrance Generate, were working at the Dollar General that night around 8:30 p.m. Ms. Clark explained that not many customers were in the store at that hour because the store closed at 9:00 p.m. Both Ms. Clark and Mr. Generate testified that one customer caught [their] attention as he entered the store because he was wearing sunglasses when it was completely dark outside.

When the man wearing the sunglasses was the only one left in the store, he approached Mr. Generate and showed him a gun in his waistband. He and Mr. Generate then headed to the front of the store, and the perpetrator made contact with Ms. Clark. The perpetrator then took both employees to the back of the store, and he had Ms. Clark tie up Mr. Generate with a shoelace. The man then put Mr. Generate in the bathroom and took Ms. Clark back to the register and safe in front of the store. The man told Mr. Generate to stay in the bathroom or things would not be good for either one of the employees. Both employees took this as a threat. At the front of the store, Ms. Clark emptied the register and the safe, and she gave the money to the armed robber. After getting the money, the man tied up Ms. Clark in the back bathroom with Mr. Generate, and he told them to stay there for five minutes. The two employees complied with this request, and when they exited the bathroom, the armed robber was gone.

[About two months later, on] December 22, 2012, the manager of the Dollar General recognized a similar man entering the store. The manager had reviewed the security footage multiple times. The manager approached Mr. Generate, who happened to be working that night as well, and asked him if the man who just entered was the same man who robbed the store in October. This man also wore sunglasses into the store when it was completely dark outside, and he had the same skin tone as the man who robbed the store. Once Mr. Generate informed the manager that he was very positive the man was the armed robber, the manager got the man's license plate, and Mr. Generate contacted the police.

Detective Haller, the case investigator, traced the license plate to a residence near the Dollar General. The vehicle was registered to Paula Butler, who is [Durden's] girlfriend. The residence also belonged to Paula Butler. Mr. Haller went to the address and made contact with a person on the second floor. After shown a still shot of the security footage, that person identified [Durden] as one of the two men who entered the store on December 22, 2012. Mr. Haller then contacted Ms. Clark and put together a photo lineup for her to review. On January 8, 2013, she identified [Durden] in that lineup as the man who robbed the store in October.

> When Detective Haller finally made contact with [Durden], Mr. Haller asked him why he was wearing sunglasses in the store when it was completely dark outside. [Durden] explained that he had problems with his eyes. When talking with [Durden], Mr. Haller noticed [Durden's] mouth and how he spoke. [Durden's] mouth, teeth and speech matched Ms. Clark's observations during the robbery. Ms. Clark had told Detective Haller that the armed robber's teeth were very distinctive because one of his teeth was chipped. After executing a search warrant on the residence of Paula Butler, Detective Haller found gloves that were very similar to those used in the robbery. No other evidence of the crime was found at the residence. Detective Haller then filed charges against [Durden].

*Commonwealth v. Durden*, No. 58 MDA 2014, unpublished memorandum at 1-3 (citations and footnote omitted).

On November 14, 2013, a jury convicted Durden of robbery and firearm violations. On December 16, 2013, the trial court sentenced Durden to an aggregate term of 11 to 22 years of imprisonment. Following the denial of his post-sentence motion, Durden filed a timely appeal to this Court in which he challenged the weight and sufficiency of the evidence supporting his convictions. Finding no merit to either claim, we affirmed Durden's judgment of sentence on January 21, 2015. *Durden*, *supra*.

On June 2, 2015, Appellant filed a *pro se* PCRA, and the PCRA court appointed counsel. On June 30, 2017, the PCRA court held an evidentiary hearing at which both Durden and trial counsel testified. At the conclusion of the hearing, the PCRA court placed on the record its reasons for denying Durden's PCRA petition. This timely appeal follows. Both Durden and the PCRA court have complied with Pa.R.A.P. 1925.

In lieu of an advocate's brief, Durden counsel has filed a copy of her no-merit letter and accompanying argument pursuant to the dictates of **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Thus, we will assess counsel's assertion that the issues Durden wishes to raise on appeal have no merit under a **Turner**/**Finley** analysis.

This Court has summarized:

> The **Turner**/**Finley** decisions provide the manner for post[-]conviction counsel to withdraw from representation. The holdings of those cases mandate an independent review of the record by competent counsel before a PCRA court or [an] appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of his [or her] review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court, or an appellate court if the no-merit letter is filed before it, **see Turner**, **supra**, then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit[.]
>
> [T]his Court [has] imposed additional requirements on counsel that closely track the procedure for withdrawing on direct appeal. . . . [C]ounsel is required to contemporaneously serve upon his [or her] client his [or her] no merit letter and application to withdraw along with a statement that if the court granted counsel's withdraw request, the client may proceed *pro se* or with a privately retained attorney[.]

**Commonwealth v. Reed**, 107 A.3d 137, 140 (Pa. Super. 2014) (citation omitted). Counsel has complied with the mandates of **Turner** and **Finley**, as summarized in **Reed**, **supra**. Thus, we must determine whether we agree with counsel's assessment of Durden's claims.

- 4 -

Durden wished to raise on appeal claims that trial counsel's assistance was ineffective for failing to: (1) file a motion to suppress the evidence seized from his residence because the supporting search warrant lacked probable cause; (2) obtain and analyze his cell phone's location and cellular tower triangulation date to corroborate the trial testimony of his alibi witness; and (3) obtain DNA results from the shoelaces used during the robbery prior to proceeding to trial. *See Turner*/*Finley* Brief at 5-6.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (internal citations and quotations omitted).

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the

- 5 -

underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. ***Id.*** at 533.

Moreover, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. ***Commonwealth v. Collins***, 545 A.2d 882, 886 (Pa. 1988) (cited with approval by ***Commonwealth v. Hall***, 701 A.2d 190, 204 (Pa. 1997)). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-63 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233, 234 (Pa. 1981). Our Supreme Court has defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Com. ex rel. Washington v. Maroney***, 235 A.2d 349, 352-53 (Pa. 1967)). ***See also Commonwealth v. Clark***, 626 A.2d 154, 157 (Pa. 1993) (explaining that a defendant asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success

substantially greater than the tactics utilized).″    A defendant is not entitled to appellate relief simply because a chosen strategy was unsuccessful. ***Commonwealth v. Buksa***, 655 A.2d 576, 582 (Pa. Super. 1995).

Finally, a finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

The PCRA court summarized the testimony presented at the PCRA hearing as follows:

> At the June 30, 2017 PCRA hearing, [Durden] testified that he asked [trial counsel] whether evidence garnered from the execution of the search warrant in the case could be suppressed. [Durden] does not believe that there was probable cause for the search warrant. During the search, a pair of purple and white gloves, utilized by [Durden] for work, were seized and used against [him] at trial. [Durden] acknowledged that the search warrant was premised upon identification evidence. [Durden] also complained that he never received any DNA results regarding his case. In the interest of judicial economy, [Durden] was allowed to orally raise this issue [even though it was not raised in his *pro se* petition]. [Durden] believes trial counsel should have obtained DNA results from the shoestrings, utilized to bind [the] victims, to show that [he] was not involved. [Durden]

orally raised a third matter, regarding cell phone records, which, also in the interest of judicial economy, was allowed. [Durden] testified that trial counsel should have obtained cell phone records for [his] phone. This would have, according to [Durden], shown that [Durden and his cell phone were] at Dick's Sporting Goods at the time of the incident. [Durden] averred that he had informed [trial counsel] that he had an alibi from being at Dick's Sporting Goods. On cross-examination, [Durden] admitted that he had no cell phone or DNA records to present at the PCRA hearing. On redirect, [Durden] offered that he had no idea whether any DNA results were ever produced by a lab.

[Trial counsel] testified that the search warrant at issue was premised upon identification of [Durden] by victims after being shown a photo lineup. [He] saw no issues with the search warrant. [Trial counsel] felt the results of the search were actually helpful to the defense in that the search only produced the gloves and not any other instruments [or evidence] of the crime such as a specific shirt and hat or a firearm. Surveillance footage from Dick's Sporting Goods had already been destroyed by the time [trial counsel] was appointed to the case. [Trial counsel] could not recall whether [Durden] had asked [him] to look into cell phone records. Moreover, [trial counsel] opined that cell phone records, if obtained, would have only revealed the location of [Durden's] cell phone and not [Durden] himself. [Trial counsel] stated that he made arguments to the jury about the lack of DNA evidence. On cross-examination [trial counsel] stated that because the gloves were from Labor Ready, many individuals within the city and county had similar gloves—including [trial counsel] himself. In [trial counsel's] opinion, this helped to overcome the identification testimony because no other evidence, such as the firearm, was found in connection with [Durden]. Thus, it did not make sense to [trial counsel] to suppress the results of the search warrant even if there had been reason to do so.

PCRA Court Opinion, 1/10/18, at 3-4 (citations and footnote omitted).

Initially, we note that as to each ineffectiveness claim, we are bound by the PCRA court's credibility determinations. *Reyes-Rodriguez*, *supra*. We will address each claim separately.

Durden first claims that trial counsel was ineffective for failing to file a suppression motion. The failure to file a suppression motion under some circumstances may be evidence of ineffectiveness assistance of counsel. However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move. The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that, if the evidence had been suppressed, there is a reasonable probability that the verdict would have been more favorable. *Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016).

Here, the PCRA court concluded that sufficient probable cause, based upon witness identification, existed within the four corners of the warrant, and that trial counsel's chosen strategy of stressing what was *not* found during the search was reasonable. The court explained:

> Within the four corners of the search warrant, the magistrate had eyewitness identifications of [Durden] as the person who perpetrated the robbery. This was sufficient to convince a neutral and detached magistrate that there was a fair probability that evidence of the crime would be found at [Durden's] home. The home was located via the address connected to [Durden's] license plate, which was seen leaving the store where the robbery occurred on a night two months removed from the crime when [Durden] had returned to the store. Thus, the strategy preferred by [Durden], of seeking suppression of the gloves obtained by

a search warrant offered no chance of success *substantially* greater than the strategy pursued by trial counsel. Moreover, we do not forget that [trial counsel] believed that the paucity of evidence obtained from the search warrant *aided* his argument to the jury that no truly damning evidence of the crime was located at [Durden's] residence. The search revealed nothing more than a commonly owned pair of gloves. Even if suppression were to have succeeded, only one piece of physical evidence would have been suppressed *and*, in doing so, the defense would have been deprived of the ability to argue that more damning evidence that one might expect to find was not located in connection to [Durden]. [Durden] cannot meet the second prong of the test for ineffectiveness.

PCRA Court Opinion, 1/10/18, at 8-9 (citation omitted).

Our review of the record supports the PCRA court's conclusion that trial counsel's chosen trial strategy was reasonable. Thus, Durden's first ineffectiveness claim fails. **Johnson**, **supra**.

The PCRA court next addressed Durden's claim that trial counsel was ineffective for failing to obtain phone records that allegedly would have corroborated his alibi witness' testimony that he was at another store when the robbery of the Dollar General occurred. Once again, the PCRA court concluded that Durden failed to meet his burden of establishing that trial counsel's chosen strategy regarding his alibi was unreasonable. The court explained:

To begin, [Durden], at the time of the PCRA hearing, did not supply the phone records; however, even if he had, and they showed that which [Durden] avers they would show, we do not believe they would have been decisive for the following reasons. [Trial counsel] opined at the PCRA hearing, that while he could not remember whether or not [Durden] had asked him to obtain the cell phone records,

- 10 -

> the cell phone records would have offered little defense because they could not have shown that [Durden] was with his cell phone. To this we would add that [Durden] was identified by the victims. Thus, [trial counsel's] fears vis-à-vis the location of the phone in relation to [Durden] are well founded. The phone records would have helped to establish where [Durden] was and, perhaps, this would have revealed that the phone was nowhere near the robbery. However, again, [Durden] might well have handed his phone to another person, prior to the robbery, to manufacture an alibi. Evidence regarding the location of the phone could not have surmounted the eyewitness identifications of [Durden] as the robber. There was no substantially greater chance of acquittal had trial counsel obtained the phone records and attempted to use them to demonstrate [Durden's] alibi. Moreover, the jurors heard from an alibi witness, [Durden's girlfriend], and they clearly did not credit her testimony.

PCRA Court Opinion, 1/10/18, at 11-12 (citation omitted). We agree. Thus, Durden's second claim of ineffectiveness does not entitle him to relief.

In his third and final claim of ineffectiveness, Durden asserts that trial counsel was ineffective for failing to obtain DNA results from the shoelaces used during the robbery prior to proceeding to trial. Once again, he has failed to meet his burden. Initially, Durden proffers no evidence that indicates DNA results were ever obtained, or even if the shoelaces are still available to be tested. Claims of trial counsel's ineffectiveness are not self-proving and therefore cannot be raised in a vacuum. *See generally*, *Commonwealth v. Pettus*, 424 A.2d 1332 (Pa. 1981); *see also Commonwealth v. Clark*, 961 A.2d 80, 94 (Pa. 2008) (explaining that, in the absence of a sufficient proffer, a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a "fishing expedition" for possible exculpatory evidence).

- 11 -

Moreover, the PCRA court agreed with trial counsel that, "as the perpetrator wore gloves, it would not be expected that the perpetrator's DNA would be found on the shoelaces" and, in fact," it was not the perpetrator," but one of the store employees who was ordered to tie up the other employee with the shoelaces. PCRA Court Opinion, 1/10/18, at 14. At the PCRA hearing, trial counsel explained his trial strategy:

> In my opinion, [Durden's] pretty accurate as far as our discussion about the DNA, there was a shoelace that was used to tie up the two store clerks. There was possibly going to be some testing for DNA. If I recall correctly, as we were coming close to when it was likely to go to trial, that DNA still hadn't been tested. They needed to get either [Durden's] DNA or DNA from the clerks to exclude it. I explained to [Durden], in my opinion, you know, it made sense to go to trial before those results came back and instead of him sitting in jail waiting months for that to happen, because there's only three ways it could come back, it comes back to him, and then have absolutely no defense, it comes back inconclusive, which then I can't make the argument that the DNA is still outstanding, which, if I recall correctly, we did try to attack the argument of the Commonwealth and evidence they had against him, or come back as someone else. I explained to [Durden] if it did come back as someone else, he would have the ability to file a motion as there is new evidence, the DNA results.

N.T., 6/30/17, at 20-21. According to trial counsel, it was a better trial strategy to argue that the Commonwealth presented no DNA evidence that implicated Durden—the actual results may have done so.

Finally, the PCRA court concluded that, given the overwhelming evidence of guilt, Durden could not prove prejudice:

> [M]ultiple eyewitnesses identified [Durden] as the perpetrator of the crime. The manager of the Dollar General identified [him] based upon his *multiple* viewings of the security footage from the incident. The manager confirmed his identification of [Durden] with Mr. Generate. The perpetrator had entered the store wearing sunglasses when it was dark outside. On a later date, [Durden] whose skin tone matched that of the perpetrator, also entered the store, at night, wearing sunglasses. Importantly, Ms. Clark had described the perpetrator as having distinctive teeth. A warrant was procured to obtain photos of [Durden's] mouth and teeth. Ms. Clark then identified that mouth and those teeth as belonging to the robber. Ms. Clark was positive of this because she had focused on the robber's mouth as a result of the sunglasses he wore.

PCRA Court Opinion, 1/10/18, at 15 (citations omitted). Thus, Durden's third ineffectiveness claim fails.

In sum, because Durden had failed to meet his burden of establishing the three-part ineffectiveness test, we concur with PCRA counsel's assessment of Durden's claims and permit her to withdraw. In addition, our independent review of the record reveals no other meritorious issue. ***Reed***, ***supra***. We therefore grant PCRA counsel's motion to withdraw, and affirm the PCRA court's order denying post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2018

- 13 -