J-S56027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MASTER GREENE, :
:
          Appellant. : No. 60 MDA 2018

Appeal from the PCRA Order, December 18, 2017,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s): CP-36-CR-0004487-2012.

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:  **FILED DECEMBER 20, 2018**

Master Greene appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court summarized the pertinent facts and procedural history as follows:

> On November 16, 2011, an arrest warrant was issued for Greene as a result of being charged with the offenses of rape of a child [and related charges].  The basis for these charges was an allegation that between April 1, 2011, and July 31, 2011, Greene engaged in sexual contact with his girlfriend's [four-year-old] daughter, M.R., at their residence in Strasburg, Lancaster County, Pennsylvania.  Greene fled the jurisdiction when confronted by his girlfriend with these allegations, and was ultimately arrested in Mesa County, Colorado, on March 8, 2012, and extradited back to Pennsylvania on June 19, 2012.
>
> The child victim, M.R., was interviewed on June 29, 2011, by Mary Hayle, a forensic interviewer, at the Lancaster

County Children's Alliance. Officer Bradley A. Klunk of the Strasburg Borough Police Department observed the interview from another room. During the recorded interview, M.R., disclosed that "uncle" (the name she uses for Greene): (1) "touched her 'Cookie'" (her word for vagina); (2) "pulled her pants down and was touching her Cookie with his hand when she was sleeping in her room"; (3) touched her Cookie with his Cookie inside her Cookie "; and (4) put his Cookie "in deep and he peed in her Cookie" on more than one occasion.

Prior to trial, the Commonwealth filed a Petition to Admit Out-of-Court Statements under the Tender Years Hearsay Exception, 42 Pa.C.S.A. § 5985.1, and a Motion to Permit Testimony by Contemporaneous Alternative Method Pursuant to the Pennsylvania Uniform Child Witness Testimony by Alternative Methods Act, 42 Pa.C.S.A. § 5985. A combined hearing on the motion and petition was held at the time of trial.

At the conclusion of the hearing on October 15, 2013, this Court granted the petition to admit out-of-court statements, having found that the statements made by the child victim to Ms. Hayle, to her mother, A.R., and to her cousin, Armand Miller, were relevant, and that the time, content and circumstances of the statements provided sufficient indicia of reliability for the admission pursuant to 42 Pa.C.S.A. § 5985.1. This Court further approved, on the record, the Commonwealth's motion to permit [M.R.'s] testimony by alternative method.

This case immediately proceeded to a jury trial . . . following these rulings on October 15, 2013. On October 18, 2013, Greene was found guilty on all charges. A pre-sentence investigation report was ordered. A further order was entered on October 18, 2013, directing Greene to undergo an evaluation by the Pennsylvania Sexual Offenders Assessment Board (SOAB) for purposes of determining whether he qualified as a sexually violent predator (SVP).

On December 18, 2013, the Office of the District Attorney received the evaluation conducted by the SOAB. The Board determined that Greene did not meet the criteria of an SVP due to the short duration of the abuse. With this

recommendation, the District Attorney's Office notified the Court on December 18, 2013, that it would not be filing a praecipe for an SVP hearing. Accordingly, the case was scheduled for sentencing.

On January 31, 2014, the Court imposed a sentence of 15 to 30 years' incarceration for the rape charge, plus concurrent sentences [for his remaining convictions].

PCRA Court Opinion, 2/27/18, at 1-4 (citations and footnotes omitted). Following sentencing, Greene retained present counsel, who filed a post sentence motion on his behalf. The trial court denied Greene's motion on February 28, 2014, and Greene filed a timely appeal to this Court.

On appeal, Greene raised four issues, including alleged trial court error in admitting M.R.'s hearsay statements and by allowing her to testify by a contemporaneous alternative method. Finding no merit to these contentions, we affirmed his judgment of sentence on April 24, 2015. ***See Commonwealth v. Greene***, 2015 WL 6143899 (Pa. Super. 2015) (unpublished memorandum). Greene did not seek further review.

On April 22, 2016, Greene filed a timely counseled PCRA petition in which he raised five claims of trial counsel's ineffectiveness, including having M.R. identify him through use of a photograph at trial, and in failing to consult, retain and present expert testimony at trial to rebut the expert testimony presented by the Commonwealth. In addition, Greene asserted that the trial court's imposition of a mandatory minimum sentence under 42 Pa.C.S.A. section 9718 constituted an illegal sentence, given this Court's decision in

- 3 -

*Commonwealth v. Wolfe*, 106 A.3d 800 (Pa. Super. 2014).[1]  The

Commonwealth filed a response.  On July 18, 2016, Greene filed an amended

petition, in which he clarified some of his other claims of ineffectiveness.  The

Commonwealth filed a response on August 22, 2016, in which it conceded the

need for an evidentiary hearing solely on the issue of trial counsel's alleged

failure to call an expert witness.

On October 25, 2016, the PCRA court issued Pa.R.Crim.P. 907 notice of

its intent to dismiss five of Greene's ineffectiveness claims, including M.R.'s

identification of him during trial by trial counsel's use of a photograph, would

be denied without further proceeding because there was no genuine issue of

---

[1] In its opinion, the PCRA court states that Greene "is entitled to a resentencing on the mandatory minimum imposed on the rape charge.  It is this Court's intention to resentence Greene after he receives appellate review of the denial of PCRA relief."  PCRA Court Opinion, 2/27/18, at 24.  Our review of the record reveals that Greene did not receive the ten-year mandatory minimum, but rather, a fifteen-year minimum, which fell within the standard range of the sentencing guidelines for his rape conviction.  Further, Greene challenged the discretionary aspects of this sentence on the basis that it was five years longer than the mandatory minimum and the trial court denied relief.  Although the Commonwealth gave notice of the mandatory minimum, and the trial court referenced it at sentencing, the court also relied on the pre-sentence report and other legitimate sentencing factors to arrive at its decision to sentence Greene to a fifteen-year mandatory minimum. Thus, resentencing Greene for the rape conviction may not be warranted.  *See Commonwealth v. Ziegler*, 112 A.3d 656, 662 (Pa. Super. 2015) (holding that when the sentencing court exceeds the mandatory minimum by applying a standard guideline range sentence, the trial court has not "sentence[d] the defendant based on the mandatory statute, and [the defendant's] sentence is not illegal on that ground").

material fact. Greene did not file a response. By order dated March 28, 2017, the PCRA court dismissed these five ineffectiveness claims.

On June 26, 2017, the PCRA court held an evidentiary hearing on the sole issue of trial counsel's failure to call an expert witness to rebut and/or contradict the testimony of the Commonwealth's trial expert, Nurse Practitioner, Julie Stover. The PCRA court heard testimony from trial counsel, the proposed defense expert, Suzanne Rotolo, Ph.D., and Ms. Stover. After this hearing, the PCRA court requested briefs solely addressing this ineffectiveness claim. By order entered December 28, 2017, the PCRA court denied Greene post-conviction relief. This appeal followed. Both Greene and the PCRA court have complied with Pa.R.A.P. 1925.

Greene raises the following issues:

> **A. ISSUE 1:** Whether [Greene] was deprived of his constitutional right to effective assistance of counsel when his trial [counsel] failed to seek the expert assistance and consultations in Sexual Assault Nurse Examinations ("SANE")?
>
> **B. ISSUE 2:** Whether [Greene] was deprived of his constitutional right to effective assistance of counsel when his trial [counsel] initiated and orchestrated an unduly suggestive identification procedure of [Greene] during a jury trial?

*See* Greene's Brief at 4.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA

- 5 -

> appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

Both of Greene's issues allege the ineffective assistance of counsel. To obtain relief under the PCRA, premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. ***Commonwealth v. Collins***, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted). A petitioner asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized." ***Commonwealth v. Clark***, 626 A.2d 154, 157 (Pa. 1993). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he [or she] may have taken." ***Stewart***, 84 A.3d at 707. A PCRA petitioner is not entitled to post-conviction relief simply because a chosen strategy was unsuccessful. ***Commonwealth v. Buksa***, 655 A.2d 576, 582 (Pa. Super. 1995).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." ***Stewart***, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" ***Id.*** (quoting ***Commonwealth v. Rathfon***, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995).

In support of his first issue, Greene argues that trial counsel's "failure to call or even consult with an expert witness, resulted in [trial counsel] being ill prepared to cross-examine the Commonwealth's expert." Greene's Brief at 14. This Court has noted that such a claim actually raises two distinct issues:

> Neglecting to call a witness differs from failing to investigate [and/or interview] a witness in a subtle but important way. The failure to investigate "presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. Importantly, a petitioner still must demonstrate prejudice. To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony would have led to a different outcome at trial.
>
> In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witnesses existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the

testimony was so prejudicial as to have denied the defendant a fair trial."

**_Commonwealth v. Pander_**, 100 A.3d 626, 639 (Pa. Super. 2014) (_en banc_)

(citations omitted).

After reviewing the testimony from the evidentiary hearing, the PCRA court rejected Greene's ineffective assistance claim because it found that strategy employed by trial counsel was reasonable, even though trial counsel did not consult or present a defense expert. The PCRA court explained:

> The record establishes that [trial] counsel employed a reasonable and legitimate strategy of attacking the issue of lack of medical evidence in the Commonwealth's case delivered coherent opening and closing statements consistent with the defense strategy, and cross-examined the prosecution witnesses in accordance with that strategy. [Trial counsel] testified at the PCRA hearing that he made the strategic decision not to present expert testimony at trial because he did not want the trial to become a battle of experts and he did not believe any expert could actually refute the testimony of the Commonwealth's expert.

PCRA Court Opinion, 2/27/18, at 14-15. The PCRA court then quoted the following explanation given by trial counsel:

> I was familiar with the report that was created. And the reality was I was familiar with the testimony as it – and it ultimately came up in the trial, this wiener in the bun testimony. There is nothing that I'm going to do to refute that.
>
> If you are familiar with the wiener in the bun, I'll never forget it, it is the fact that any penetration, however slight, meets the elements of the offense.
>
> The one thing that came to mind, that the expert that was called testified to the very small seven millimeters, eight millimeters, I forget the exact size of the victim's opening, genital opening.

- 9 -

I remember that I wanted to attack that to a jury in a more of a layperson attack.

I believe I had an Allen wrench that was that diameter and I was trying to impress on the jury that that was unrealistic.

And I was trying to discredit the expert without calling another one because at the end of the day the expert got up and said, well, even the wiener and the bun analogy where the penis is running along the lips of the vagina meets the elements of the offense. Well, there's no way I am going to refute that.

***

Bring another expert in to attack that, that's just going to amplify that part of the testimony, and that was something that I wanted to stay away from.

PCRA Court Opinion, 2/27/18, at 15 (citing N.T., 6/26/17, at 8-9))[2]

The PCRA court then discussed the expert testimony Greene presented at the PCRA hearing and explained why it did not establish prejudice:

Greene's proposed defense expert, Dr. Rotolo, conceded at the PCRA Hearing that she did not disagree with Nurse Stover's ultimate conclusion that a child's allegation of sexual abuse may be consistent with a "normal" examination. Thus, had Dr. Rotolo testified as a defense expert at trial and acknowledged that M.R.'s allegations of sexual assault were consistent with Nurse Stover's finding of a "normal" medical examination, this testimony would not have been beneficial to Greene's defense and the result of the trial would have been the same.

*Id.* at 15-16. Finally, although the PCRA court noted that Dr. Rotolo took exception to Nurse Stover having "misquoted some statistics" from one study,

_____

[2] Nurse Stover actually testified that M.R.'s "hymenal orifice" measured "equal to or less than four millimeters." N.T., 10/16/13, at 388.

- 10 -

and that she even relied on an allegedly irrelevant study involving impregnated teenagers, the PCRA found that Dr. Rotolo did not take issue with Nurse Stover's ultimate representation that these studies supported her claim that sexual abuse can occur even though there is no physical injury to the child. *See* PCRA Court Opinion, 2/27/18, at 16-17.

Our review of the record supports the PCRA court's conclusions. Greene asserts that "[f]or no strategic reason, the jury at [his] trial was left with the impression that [Nurse] Stover's opinions were unassailable." Greene's Brief at 18. He further contends that, had trial counsel "elected to either educate himself or seek the assistance of an expert on child abuse," he would have discovered that Nurse Stover "grossly mischaracterized both of the articles that formed the basis of her trial testimony and expert opinion." *Id.* According to Greene, "[s]uch rich fodder should inescapably lead to a cross-examiner[']s ability to elicit helpful testimony." *Id.*[3] Yet, the expert Greene called at the evidentiary hearing, while taking issue with certain statements made regarding child abuse studies, could not contradict Nurse Stover's substantive opinions. In short, even with the proffered expert's proffered testimony, Nurse Stover's opinions remained "unassailable."

In further arguing that trial counsel had no reasonable trial strategy, Greene cites to counsel's statement that he wanted more of a "layperson

_____

[3] We note that trial counsel did cross-examine Nurse Stover as to the relevancy of the study involving impregnated teenagers when M.R. as only four years old when the abuse occurred. *See* N.T., 10/16/13, at 397-98.

attack" on the absence of physical evidence of sexual abuse and counsel's statement that he did not want Greene's trial "to become a battle of the experts." Greene's Brief at 8. In making this argument, Greene ignores trial counsel's additional statement that he could not refute the Commonwealth's expert's opinion that "penetration" could have occurred even in the absence of physical evidence. Indeed, as noted above, Greene's proffered expert could not refute Nurse Stover's ultimate conclusion that penetration could have occurred despite the absence of evidence of physical injury.

Trial counsel's stated trial strategy was that, given the lack of physical evidence, M.R. was not sexually abused, and if she was, Greene was not the perpetrator. **See** N.T., 6/26/17, at 5-6. The PCRA court found this strategy reasonable, and noted that trial counsel believed calling his own expert would have only emphasized the fact that "penetration however slight" occurred, and that this emphasis would be to Greene's detriment. **See supra**. We agree.

Finally, Greene's claim that "[t]here was not overwhelming evidence of guilt in this matter," and that the credibility of Nurse Stover was critical, ignores the testimony of the victim, her mother, and others regarding his perpetration of sexual abuse upon M.R. In sum, for all these reasons, Greene's first ineffective assistance claim fails.

In his remaining ineffectiveness claim, Greene asserts that trial counsel "initiated and orchestrated an unduly suggestive identification procedure" of

him during trial.[4]   Greene's Brief at 4.   According to Greene, "[trial counsel's] decision to seek a line of questioning that resulted in the only positive identification of [him] at trial represent[s] a gross miscarriage of justice." Greene's Brief at 14.   Greene further argues that, "[a]bsent such error, [he] had a strong basis for a judgment of acquittal on the grounds of failure to identify."  *Id.* at 26.[5]

The PCRA court found that Greene waived this claim on appeal, because, although it was originally raised in his PCRA petition, Greene did not respond to the PCRA court's Rule 907 notice that the claim would be dismissed without a hearing, and because it is improperly being raised for the first time on appeal.   PCRA Court's Opinion, 2/27/18, at 23 (citing **Commonwealth v. Henkel**, 90 A.3d 16, 29 (Pa. Super. 2014) (involving claims of PCRA counsel's ineffectiveness); Pa.R.A.P. 302(a).   We disagree.   Greene properly raised this claim of ineffectiveness in his PCRA petition, and it was dismissed without a hearing.   Greene could not immediately challenge this determination, however, until the PCRA court ruled on the one remaining ineffectiveness

---

[4] Although Greene characterizes his identification by M.R. as unduly suggestive, he provides no argument on this aspect of his claim.  Thus, it is waived.  **See generally**, **Commonwealth v. Tielsch**, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal).

[5] At the PCRA hearing, trial counsel acknowledged that he took a risk in asking to M.R. to identify the person in the photograph.  As Greene now notes, trial counsel testified that, had M.R. not identified that person as Greene, "I was ready to make my motion right then and there to dismiss the case."  N.T., 6/26/17, at 23.

claim following the evidentiary hearing. Thus, Greene's ineffectiveness claim involving his identification by the victim at trial is properly before us.

The PCRA court further held that, absent waiver, the claim lacked arguable merit because, despite Greene's claim to the contrary, M.R.'s identification of Greene via the photograph displayed by trial counsel was not the only positive identification of Greene as the perpetrator. Because M.R. testified via closed circuit television, an in-court identification of Greene was impossible. In reaching the conclusion that Greene could not establish the requisite prejudice regarding this ineffectiveness claim, the PCRA court explained:

> As noted above, in her testimony at trial, [M.R.] identified the person who touched her private parts as "Uncle." During the forensic interview at the Children's Alliance, [M.R.] unequivocally stated that her "daddy uncle" who "lives with her" assaulted her. The victim's mother testified that the victim called Greene "Uncle." The identification by [M.R.], coupled with her mother's in-court identification were sufficient to establish that Greene was the perpetrator of the sexual abuse. Greene, therefore, suffered no prejudice when [M.R.] further identified a photo of Greene as "uncle."

PCRA Court Opinion, 2/27/18, at 23 (citations omitted). We agree. *See* ***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa. Super. 2010) (concluding evidence was sufficient to support the defendant's conviction for sex offenses; although no in-court identification of the defendant was possible because the victims testified via closed-circuit television, the victims testified as to the defendant's identity, and a social worker made an in-court identification of the defendant).

In sum, neither of Greene's ineffective assistance of counsel claims warrant post-conviction relief. Thus, we affirm the PCRA court's order denying his amended petition.

Order affirmed.

Judge Musmanno joins this Memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2018