J-S26004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS LEE HASSINGER | : | |
| | : | |
| Appellant | : | No. 20 MDA 2025 |

Appeal from the PCRA Order Entered November 19, 2024
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0001801-2018

BEFORE:  LAZARUS, P.J., OLSON, J., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.:　　　　　**FILED: SEPTEMBER 3, 2025**

Dennis Lee Hassinger appeals from the order, entered in the Court of Common Pleas of Centre County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful review, we affirm on the basis of the opinion authored by the Honorable Jonathan D. Grine, PJ.

This Court has previously set forth the facts of this case as follows:

> In the early morning hours of October 30, 2018, the Centre County courthouse and adjacent sheriff's department sustained fire damage to their roofs.  During the investigation, police asked the sheriff's department to review security surveillance footage from cameras around the courthouse.  The surveillance footage revealed an individual dressed in boots, camouflage shorts, and a dark hooded sweatshirt walking around the courthouse and sheriff's department.  The footage also showed the same individual throwing burning incendiary devices (i.e., Molotov cocktails) onto the roofs of the courthouse and the sheriff's

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9545.

department. Three police officers and three sheriff['s] deputies recognized Hassinger as the individual in the footage.

Police then obtained and executed a search warrant [for the location] where Hassinger was staying and recovered clothing that matched what was seen in the video. The police also recovered a lighter and yellow grocery bags similar to the ones burnt onto the concrete on top of the courthouse and found on the pavement across the street from the courthouse. Video taken two days earlier from the Dollar [General] showed Hassinger purchasing a two-liter bottle of soda, and requesting plastic bags, which [were] yellow. Police also recovered Hassinger's cell phone and Facebook account, which revealed texts and posts indicating an extreme animosity toward the Centre County court system and law enforcement.

Most of the Facebook posts were made in late January 2018, in the days leading up to and during Hassinger's trial in the Centre County courthouse on unrelated charges stemming from a domestic incident [that] occurred in 2017. In one of those posts, Hassinger referenced a 1996 criminal case against him, and claimed "[t]wo lying ass Pennsylvania State Police troopers Said i attacked them in my own home." In other Facebook posts made around the same time, Hassinger excoriated "lying" police, whom he variously referred to as "F--king coppers," "THEE FUZZ," "f—kin pussies," "f--kn fuz pigs popos," and "f--kn muthhaf--kn sorry ass dirty cocksuckers calling them selfs police officers of the law."

Hassinger also condemned the Centre County court system in his Facebook posts by claiming "F—kin Centre County is soso like beyond corrupted," is an "unfair justice system," and is "NUTTIN BUTT A BUNCH OF F—KN CRIMINALS" and "POWER TRIPPIN WHORES HOES" and "PRICKS." Hassinger also claimed that "THIS LYING COUNTY MADE MEE A WRONGFUL CONVICTED FELON W/OUT MEE DOING ANYTHING TO DESERVE IT." Hassinger condemned these entities to "go f—k ur self literally and go @ too f-kn hell n burn."

Hassinger indicated in another Facebook post that he had received a letter advising him that he was "a convicted felon 2 twice over," and claimed that this was an "injustice for anybody to be taken advantage of by the justice system," and stated that he "was not giving up without a fight" and would "[f]ight fire w/fire." Hassinger additionally claimed that Centre County was "F—kn evil bullsh-t" and stated "GodDamn u to HellFireAndBrimstone Lake of

fire Ur firey prison awaits you so f—kn burn where u don't get use to it thee flames of Hell were you wish for death."

In a text message sent to his mother approximately one week before the arson, Hassinger complained about "f—kn corruption w/in a f—kn decaying law systems" and "those f—kn muthhaf—kn sorry ass dirty cocksuckers calling them selfs police officers."

Police arrested Hassinger and charged him with multiple counts of arson and related offenses. When Hassinger was asked why he committed the arson, he initially stated "I don't know," but later denied any involvement. The Commonwealth developed a theory that Hassinger, who had an extensive criminal record, harbored extreme animosity toward the courts and law enforcement[,] which provided a motive for him to set fire to the courthouse and sheriff's department. On this basis, the Commonwealth sought to introduce, inter alia, a 1996 conviction for terroristic threats, and a 2005 conviction for burglary, assault, harassment, and trespass.

Both Hassinger and the Commonwealth filed motions in limine to preclude/permit the introduction of (1) Hassinger's criminal record; and (2) lay opinion testimony from law enforcement personnel identifying Hassinger in surveillance footage. Following a hearing, the trial court determined that the prior convictions were admissible on the basis that they showed motive and/or intent, and their probative value outweighed any prejudicial impact. The court also ruled that law enforcement officers could provide lay opinion identification testimony. On this basis, it granted the Commonwealth's motions in limine and denied Hassinger's motions in limine.

The matter proceeded to a jury trial in September 2019. During trial, the Commonwealth presented the testimony of six law enforcement officers, each of whom identified Hassinger as the individual in the surveillance video. The Commonwealth also introduced Hassinger's prior convictions. In relation to the 1996 conviction for terroristic threats, the Commonwealth was permitted to introduce the testimony of Trooper Warren Sasserman, who explained that he and Corporal Daniel Hawk of the Pennsylvania State Police were dispatched to serve a mental health warrant on Hassinger that had been issued based on information supplied by Hassinger's mother. When they encountered Hassinger and informed him of the warrant, Hassinger stated, "I am not going anywhere with you fucking pigs,

- 3 -

I will kill the first one that touches me, you're going to call more fucking cops because it's going to take more than two of you."

Hassinger attempted to evade Trooper Sasserman and Corporal Hawk, and when Corporal Hawk blocked Hassinger's exit, Hassinger starting swinging at them and a physical altercation ensued. Trooper Sasserman and Corporal Hawk wrestled Hassinger to the ground, and were eventually able to immobilize and handcuff him, although Hassinger continued to kick and attempt to break free. As they were escorting Hassinger from the residence to their vehicle, Hassinger stated to them, "you better watch out because I am going to Pearl Harbor your ass." Hassinger further threatened that he would "get even." Trooper Sasserman suffered a laceration to his face and swelling.

In relation to the 2005 conviction for burglary, assault, harassment, and trespass, the Commonwealth introduced the bill of information, the complaint, and evidence that Hassinger plead guilty to the above charges. The Commonwealth also introduced the sentencing order.

At the conclusion of trial, the jury found Hassinger guilty of three counts of arson.[2] The trial court ordered the preparation of a presentence investigation report ("PSI"). On November 21, 2019, the trial court sentenced Hassinger to an aggregate prison term of ten to twenty years. Hassinger filed post-sentence motions, which the trial court denied.

*Commonwealth v. Hassinger*, 260 A.3d 128, at *1-*3 (Pa. Super. 2021) (Table) (paragraph break added; footnotes and citations to record omitted).

Hassinger appealed to this Court, claiming the trial court abused its discretion by: (1) admitting evidence of his prior convictions and the fact that he was on parole at the time of the offenses; (2) allowing six law enforcement witnesses to give identification testimony; and (3) sentencing Hassinger in excess of the guidelines while failing to give adequate consideration to his mental health issues and rehabilitative needs, while focusing solely on his lack

---

[2] 18 Pa.C.S.A. § 3301(a.2), (c)(1).

of remorse and lengthy criminal record. *See id.* at \*3, \*10. This Court affirmed Hassinger's judgment of sentence, concluding that: (1) evidence of his prior convictions was properly admitted under the res gestae exception, *see id.* at \*5; (2) the lay opinion identification testimony of the law enforcement officers was admissible and any claim specifically challenging the number of law enforcement officers who testified was waived for failure to object at trial, in a post-sentence motion, or in Hassinger's Pa.R.A.P. 1925(b) statement, *see id.* at \*7, \*9; and (3) the trial court sufficiently explained Hassinger's sentence and took into consideration all relevant mitigating and aggravating factors. *See id.* at \*12. The Court also concluded that Hassinger had waived his claim that the court considered impermissible sentencing factors by failing to include it in his Pa.R.A.P. 2119(f) statement. *See id.* at \*11 n.8.

Hassinger filed a petition for allowance of appeal with our Supreme Court, which was denied on December 30, 2021. *See id.*, 270 A.3d 431 (Pa. 2021) (Table). On September 29, 2022, Hassinger filed a timely pro se PCRA petition. The PCRA court appointed counsel, who filed two amended petitions, to which the Commonwealth responded. On May 21, 2024, the PCRA court held a hearing, at which trial counsel testified. On November 19, 2024, the PCRA court entered an order denying Hassinger relief. On December 23, 2024, the PCRA court entered an order granting Hassinger leave to file a notice of appeal, nunc pro tunc, within 30 days. Hassinger filed a notice of appeal nunc pro tunc on December 31, 2024, followed by a timely court-ordered Rule

1925(b) concise statement of errors complained of on appeal. Hassinger raises the following claims for our review:

1. Did the PCRA court commit an error of law in finding that [Hassinger did] not establish[] ineffective assistance for [trial] counsel's failure to properly object to the introduction of prejudicial evidence at trial?

2. Did the PCRA court commit an error of law in finding that [appellate] counsel was not ineffective for failing to properly raise issues on direct appeal[, which issues] were deemed waived by [this Court]?

Brief of Appellant, at 4 (unnecessary capitalization omitted).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251, 1252 (Pa. Super. 2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007). If the record supports a PCRA court's credibility determination, it is binding on the appellate court. *Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011).

Here, Hassinger's claims allege the ineffectiveness of his prior counsel. "Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa. Super. 2020). A PCRA petitioner must satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987), to prevail on an ineffective assistance claim. Specifically, "the

petitioner must plead and prove, by a preponderance of the evidence, three elements:  (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction." ***Commonwealth v. Parrish***, 273 A.3d 989, 1003 n.11 (Pa. 2022) (citation omitted).  A claim fails where "a petitioner fails to satisfy any of the three prongs of the ineffectiveness test[.]" ***Id.*** (citation omitted).

With regard to the reasonable basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007).  We will conclude that counsel's chosen strategy lacked a reasonable basis only if the appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ***Commonwealth v. Williams***, 899 A.2d 1060, 1064 (Pa. 2006) (citation omitted).  To establish the prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness.  ***Commonwealth v. Dennis***, 950 A.2d 945, 954 (Pa. 2008).  "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." ***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011).

Hassinger argues that he was prejudiced by the "cumulative effect" of the law enforcement officials' identification testimony, which he asserts "worked to exacerbate the effect of the adverse pretrial ruling permitting the Commonwealth to admit [his] prior criminal history."[3]  Brief of Appellant, at 14.  Hassinger argues that trial counsel's failure to object to the number of law enforcement officers testifying "contributed to a trial [that] relied unfairly on [] Hassinger's prior bad acts as propensity" evidence and that "the verdict would have been different had the evidence been excluded[.]"  *Id.* at 17. Hassinger further asserts that trial counsel was ineffective for failing to object to the introduction of his parole status, which he alleges also contributed to the cumulative prejudicial effect of the identification testimony discussed above.  Hassinger argues that appellate counsel was also ineffective for not including a claim regarding the introduction of his parole status in his Rule 1925(b) statement, resulting in waiver on direct appeal.[4]  *See Hassinger*, 260 A.3d 128 at *7 n.6.

---

[3] This Court previously affirmed the trial court's admission of Hassinger's prior criminal history.  *See Hassinger*, 260 A.3d 128 at *5-*7.

[4] To be eligible for relief on a layered ineffectiveness claim, an appellant must plead and prove that:

> (1) trial counsel was ineffective for a certain action or failure to act; and (2) direct appeal counsel was ineffective for failing to raise trial counsel's ineffectiveness.  As to each relevant layer of representation, appellant must meet all three prongs of the *Pierce* test for ineffectiveness.  A failure to satisfy any of the three prongs of the *Pierce* test requires rejection of a claim of

*(Footnote Continued Next Page)*

Finally, Hassinger argues that appellate counsel was ineffective for failing to preserve, by not including it in his Pa.R.A.P. 2119(f) statement, a claim that the sentencing court considered impermissible factors at sentencing. Specifically, in his second amended PCRA petition, Hassinger identified these "impermissible factors" as (1) the court's failure to adequately consider his mental health history or rehabilitative needs and (2) the court's consideration of his lack of remorse. *See* Second Amended PCRA Petition, 8/31/23, at ¶ 14. Hassinger argues that, "[h]ad those sentencing issues been heard by the appellate court, it is likely that the Court would have remanded the case for resentencing[.]" Brief of Appellant, at 24. Hassinger is entitled to no relief.

In denying Hassinger relief, the PCRA court concluded that: (1) trial counsel had a reasonable strategic basis for not objecting to the numerous Commonwealth law enforcement identification witnesses, *see* PCRA Court Opinion, 11/19/24, at 4-7; (2) there was no arguable merit to Hassinger's claim regarding his parole status, as the jury was not, in fact, informed of his parole status and the trial court provided a limiting instruction as to the purposes for which Hassinger's criminal history could be considered, *see id.*

_____

ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of direct appeal counsel.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (citation omitted).

- 9 -

at 7-8; and (3) Hassinger's sentencing claim was previously litigated,[5] as this Court addressed the trial court's consideration of Hassinger's mental health history, rehabilitative needs, and lack of remorse on direct appeal. *See id.* at 9-10; *see also Hassinger*, 260 A.3d 128 at \*9-\*13 (addressing discretionary aspects of sentencing claim).

Upon our review of the parties' briefs, the record, and the applicable law, we conclude that the opinion authored by President Judge Grine thoroughly and correctly disposes of Hassinger's appellate claims. Accordingly, we affirm on the basis of President Judge Grine's opinion and direct the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/03/2025

---

[5] An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." *Commonwealth v. Fowler*, 930 A.2d 586, 594 (Pa. Super. 2007), quoting 42 Pa.C.S.A. § 9544(a)(2). The merits of a PCRA claim will not be reviewed if the claim was previously litigated. *See* 42 Pa.C.S.A. § 9543(a)(3).

- 10 -

**IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA**
**CRIMINAL ACTION-LAW**

COMMONWEALTH OF PENNSYLVANIA,   )
   )
   )
   )
v.   )   No. CP-14-CR-1801-2018
   )
DENNIS LEE HASSINGER,   )
         Defendant.   )

*Attorney for Commonwealth:*        *Matthew F. Metzger, Esq.*
*Attorney for Defendant:*        *Helen A. Stolinas, Esq.*

## OPINION AND ORDER

Presently before the Court is Petitioner's Amended Post-Conviction Relief Act ("PCRA") Petition. An evidentiary hearing was held on May 21, 2024. The record was transcribed, and the parties thereafter filed post-hearing submissions. On consideration of the evidence and arguments of the parties, for the reasons set forth below, the Court concludes Petitioner is not entitled to PCRA relief.

### I. Background

On September 25, 2019, following a jury trial, Dennis Lee Hassinger ("Petitioner") was convicted of three counts of Arson, 18 Pa.C.S.A.§§ 3301(a.2), (c)(1). On November 21, 2019, Petitioner was sentenced to two consecutive periods of not less than five nor more than ten years of incarceration, for an aggregate sentence of ten to twenty years in a state correctional institution on Counts 1 and 3. There was no further penalty for the conviction on Count 2. Petitioner appealed to the Superior Court, which affirmed by memorandum opinion dated July 9, 2021. Allowance of appeal was requested in the Pennsylvania Supreme Court but was denied on December 30, 2021.

Petitioner was represented at trial by Attorney Patrick McAreavy ("Trial Counsel") of the Centre County Public Defender's Office. Chief Public Defender David Crowley ("First Appellate Counsel") filed the Concise Statement of Matters Complained of on Appeal ("Concise Statement") and Attorney Gopal Balanchandran ("Second Appellate Counsel") represented Petitioner in the appellate courts.

■O ☐ RD ☐ S

Petitioner filed a pro se PCRA petition on September 29, 2022. Counsel was appointed and was permitted to file an Amended PCRA petition on Petitioner's behalf. The Amended PCRA was filed on April 17, 2023. The Commonwealth filed a Response to the PCRA petition on July 11, 2023. A PCRA conference was held on July 26, 2023, after which Petitioner, through counsel, sought leave to file a subsequent amendment to the PCRA petition. The second Amended PCRA petition was filed August 31, 2023, and the Commonwealth filed a response on October 30, 2023.

In the Amended PCRA Petition, Petitioner asserts he is entitled to relief under 42 Pa.C.S.A §9543(2)((ii). Petitioner alleges multiple instances of ineffective assistance of his trial and appellate counsel which he claims so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. Petitioner requests that the underlying judgment be reversed, that his judgment of sentence be vacated, and that he be awarded a new trial. In the alternative, Petitioner requests reinstatement of his direct appeal rights to allow for the waived issues to be heard.

A PCRA evidentiary hearing was held on May 21, 2024. Trial Counsel was the sole witness who testified at the PCRA hearing.

## II. Applicable Standards

A defendant may be eligible for relief under the PCRA if his conviction or sentence resulted from "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. §9543(2)(ii). Counsel is presumed to be effective. *Commonwealth v. Collins*, 545 A.2d 882, 885 (Pa. 1988). To obtain relief on a claim that counsel was ineffective under the PCRA, a defendant must overcome the presumption of competence and show that counsel's performance was deficient and resulted in prejudice to the defendant. *See Commonwealth v. Dennis*, 17 A.3d 297, 301 (Pa. 2011) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In Pennsylvania, this requires a defendant to demonstrate: "(1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error." *Id.* (citing *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). Our appellate courts have

2

defined a "reasonable probability" in this context as "a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1044 (Pa. Super. 2019) (quoting *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013)).

The first prong of the ineffective assistance of counsel test questions whether the asserted claim is of arguable merit because "counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Durst*, 559 A.2d 504, 505 (Pa. 1989). Arguable merit exists when the factual statements, "if accurate, could establish cause for relief." *Stewart*, 84 A.3d at 707.

The second prong concerns whether counsel's conduct lacked a reasonable basis. In deciding whether counsel acted reasonably, the question is not whether counsel could have pursued more logical, other courses of action; rather, the question is whether counsel's actions or inactions have any reasonable basis. *See Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015). "Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success *substantially greater* than the course actually pursued." *Commonwealth v. Spotz*, 84 A.3d 294, 311–12 (Pa. 2014) (internal citations omitted) (emphasis added). A court will not find counsel to be ineffective if counsel's particular action has "some reasonable basis designed to effectuate his client's interest," and "was not the result of sloth or ignorance of available alternatives." *See Commonwealth v. Rivera*, 773 A.2d 131, 140 (Pa. 2001); *Collins*, 545 A.2d at 886. Counsel will be determined to be effective "if any reasonable basis for his or her actions is apparent from the record." *Commonwealth v. Hancharik*, 633 A.2d 1074, 1079 (Pa. 1993); *see also Commonwealth v. Washington*, 927 A.2d 586, 606 (Pa. 2007); *Commonwealth v. Twiggs*, 331 A.2d 440, 443 (Pa. 1975).

The third prong of the ineffective assistance test examines whether counsel's error caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). When evaluating allegations of prejudice, the question is whether there exists "a reasonable probability that the result of the proceeding would have been different" but for counsel's error. *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013).

Counsel is presumed to be effective, and it is the defendant's burden to prove each prong of the test for ineffectiveness by a preponderance of the evidence. *See Collins*, 545 A.2d at 886. "A failure to satisfy *any* prong . . . will require rejection of the claim." *Commonwealth v.*

3

*Martin*, 5 A.3d 177, 182-3 (Pa. 2010) (emphasis added); *Commonwealth v. Wharton*, 811 A.2d 978, 986 (Pa. 2002). The Court is not required to analyze the ineffective assistance of counsel test prongs in any particular order; "if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014).

### III.    Petitioner's Claims

In the present case, Petitioner claims his convictions and resulting sentences are the direct result of Trial Counsel's ineffective assistance in various respects, and that his first and second appellate counsel failed to preserve various claims for appeal. Specifically, Petitioner makes three claims of ineffective assistance of counsel, alleging (1) Trial Counsel was ineffective for failing to object that too many law enforcement witnesses provided identification testimony, and First Appellate Counsel was ineffective for failing to preserve the claim for appeal; (2) Trial Counsel was ineffective for failing to object that the jury was informed of Petitioner's parole status at the time of the arson, and First Appellate Counsel was ineffective for failing to preserve the claim for appeal; and (3) Second Appellate Counsel was ineffective for failing to preserve a claim that the Court considered "impermissible factors" at the time of sentencing. Each of these claims is addressed below.

### IV.    Analysis

#### A. *Ineffective Assistance for Failure to Object to the Number of Law Enforcement Witnesses Providing Identification Testimony and Failure to Preserve this Claim on Appeal*

Petitioner first claims that Trial Counsel was ineffective for failing to challenge the number of law enforcement officers who testified against him at trial on the basis that the evidence was cumulative and unduly prejudicial. At trial, the Commonwealth called a total of ten law enforcement officers who testified about their prior interactions with Petitioner either personally or professionally. Seven of those ten witnesses identified Petitioner as the individual in the surveillance video of the offense.

Sheriff Bryan Sampsell testified that he recognized Petitioner as the man in the surveillance video due to his physical features and clothing. He further testified that his familiarity with Petitioner was because they have known each other for 35 years, dating back to when they were in middle school together. Likewise, Officer Robert Holt testified that he

4

immediately recognized Petitioner in the surveillance video because they had gone to school together and have known each other for over 30 years. Deputy Levi Knoffsinger identified Petitioner on the video based on his familiarity with Petitioner's distinctive clothing and manner of walking. Deputy Knoffsinger recognized Petitioner from having seen him in Bellefonte, where they both live, and at security checkpoints at the courthouse. Officer Robert Igoe recognized Petitioner from a still image taken from the video, and the basis of his identification was seeing Petitioner frequently in Bellefonte over the previous 20 years and official police interactions with him.

After the first three law enforcement officers were called as witnesses, the Court held a sidebar conference and asked the Commonwealth: "So you got Witmer, you got Holt, you got Sampsel, how many people do we have to say they saw him and thought it was Denny Hassinger?" (N.T. 9/24/2019, p. 210). Trial counsel did not object to the Commonwealth presenting the ten law enforcement witnesses.

As to the first prong of the ineffectiveness analysis, this claim does not present arguable merit. Prior to trial, the Commonwealth filed motions *in limine* seeking to permit admission of law enforcement identification testimony by Sheriff Bryan Sampsell, Officer Robert Holt, Deputy Levi Knoffsinger, and Officer Robert Igoe and Rule 404(b) evidence of Petitioner's prior arrests and convictions. The Court granted the motions *in limine* and expressly permitted identification testimony from these four witnesses, as well as Detective William Witmer, who testified about both identification and the Rule 404(b) evidence. Deputy Jordan Booher and Deputy Polly Clontz also testified briefly at trial and identified Petitioner as the person in the surveillance video. Additionally, the Court permitted the Commonwealth to present testimony from Trooper Warren Sasserman as to Rule 404(b) evidence, and Officers Shawn Luse and Matthew Pollock as to their observations of Petitioner in the days immediately following the arson.

At its core, Petitioner's argument relating to the number of law enforcement witnesses is a restatement of two issues previously litigated and ruled upon by the Superior Court; specifically, the admissibility of Rule 404(b) evidence of prior interactions with law enforcement and the admissibility of identification testimony from six law enforcement officers. A petitioner is not eligible for PCRA relief where an issue has been previously litigated. 42 Pa.C.S. § 9543(a)(3). An issue is previously litigated "if the highest appellate court in which the

5

petitioner could have had review as a matter of right has ruled on the merits of the issue; or it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S. § 9544(a). Here, the Superior Court expressly upheld this Court's rulings on the Rule 404(b) evidence and the propriety of identification testimony from six law enforcement witnesses, noting, "the lay opinion testimony provided by law enforcement witnesses was based on personal perceptions and was helpful to the jury to reach a clear understanding of the identity of the individual in the surveillance video." Sup. Ct. Op., 7/9/2021 at 20. Given the low-quality video footage of the incident, identification testimony from multiple sources was not needlessly cumulative or unduly prejudicial.

Even if the Court found there to be arguable merit to this claim, the claim would fail because Trial Counsel had a reasonable basis for not objecting to the Commonwealth presenting numerous law enforcement witnesses at trial. Once the Court granted the Commonwealth's motions *in limine* regarding the Rule 404(b) evidence and the identification testimony, Trial Counsel was aware that at least six law enforcement officers would be testifying at trial. Given that adverse ruling, Trial Counsel devised a two-part strategy. First, he sought to demonstrate that the surveillance video evidence was weak, or the Commonwealth would not need to provide so many witnesses to say that Petitioner was the individual in the video. Second, Trial Counsel used the recurring identifications of Petitioner by law enforcement to further his theory that Petitioner was targeted by law enforcement officials in Centre County due to their bias against him. Trial Counsel testified at the PCRA evidentiary hearing and explained the strategy as follows:

> Part of our strategy on this was that there was a lot of side evidence or noise I would call it when it came down to who was on the video is really what we were trying to figure out. And I was kind of trying to show this idea that if this video is such great evidence, it's, you know, so dispositive that [Petitioner] is the guilty party here then, anyone testifying then is kind of -- it kind of belies that. So, you know, if it's such a great video, why would we need so many deputies to come in and say this is the guy who it is. I think it kind of gave doubt to the Commonwealth even believing that the video really did show [Petitioner] for sure.

> \* \* \*

> I liked the idea of all of the police officers kind of coming up in a row and saying the same thing. You know, they work together, they are -- there's this kind of narrative, like I said, we had going where it's law enforcement versus [Petitioner].

6

So I kind of liked all of them coming up and saying the same thing, kind of made it seem like, you know, we're following in line here, we're saying this is what the video shows, you don't even need to look at it and believe your eyes because all these police officers are coming up and saying the exact same thing. So I thought that led to our best strategy, kind of that, you know this video isn't that great. And then since we already have this situation, we had the other strategy that would come in, why the police might want to say it is [Petitioner]. So it kind of went hand in hand with that.

\* \* \*

I was trying to show that it was the police just saying this was [Petitioner] even though we couldn't tell who it was on video because of this supposed kind of review that the Commonwealth was basically saying existed.

N.T. 5/24/24 at 8-11. Trial Counsel further testified at the PCRA hearing that he thought the jury would be fatigued by having testimony from multiple witnesses providing similar testimony. N.T. 5/24/24 at 12.

The Court finds Trial Counsel's strategic choice not to object to the numerous law enforcement witnesses was reasonable and designed to effectuate Petitioner's best interest. Trial Counsel's decision logically supported his theory that the Commonwealth had not met its burden of establishing the Petitioner's guilt beyond a reasonable doubt due to the weak nature of the surveillance video and law enforcement's alleged bias against Petitioner. Accordingly, Petitioner's first ineffective assistance of counsel claim as to Trial Counsel must be rejected. Additionally, Petitioner's ineffective assistance claim against First Appellate Counsel for failure to preserve the claim regarding too many law enforcement witnesses must also fail. See *Commonwealth v. Reid*, 627 Pa. 151, 170, 99 A.3d 470, 482 (Pa. 2014) ("If any one of the prongs as to trial counsel's ineffectiveness is not established, then necessarily the claim of appellate counsel's ineffectiveness fails.").

### B. *Ineffective Assistance Regarding Jury Being Informed of Petitioner's Parole Status*

Petitioner's second claim of ineffective assistance is based on Trial Counsel failing to object to the jury being informed that Petitioner was on parole at the time of the offense and First Appellate Counsel failing to properly preserve that issue for appeal. Prior to trial, Trial Counsel filed motions *in limine* seeking to preclude any evidence or testimony regarding parole status at

7

the time of the arson. The Commonwealth agreed not to present the parole status, and the Court issued an order granting the motion *in limine*.

During the trial, the Commonwealth read Petitioner's prior criminal history into the record, including a sentencing order dated February 23, 2018, which stated he would "[u]ndergo imprisonment in the Centre County Correctional Facility for a period of not less than 10 days nor more than 12 months. . . . Credit is given for 10 days served on this charge. Petitioner is eligible for immediate parole." N.T. 9/24/19 at 61-62. Trial Counsel did not object to the introduction of this evidence. In the Concise Statement on direct appeal, First Appellate Counsel raised the issue of Petitioner's parole status being referenced at trial by arguing the trial court "erred in allowing the Commonwealth to introduce his prior record." Then, in the appellate brief, First Trial Counsel argued that this Court erred by permitting the Commonwealth to present the sentencing order which "more or less informed [the jury] that [Petitioner] was on parole during the time he allegedly set fire to the courthouse." Petitioner's Direct Appeal Brief at 43. The Superior Court found that the claim was waived for failure to include it in the Concise Statement, noting that the Concise Statement was "vaguely worded." Superior Court Opinion, 7/9/2021 at p.16, n.6).

In reviewing the record, the Court finds this issue lacks arguable merit. Petitioner cites *Commonwealth v. Matthews*, 783 A.2d 338 (Pa. Super. 2001) for the proposition that identifying a witness as a defendant's parole officer was unnecessary and unfairly prejudicial. *Matthews* is distinguishable for two significant reasons. First, the prior criminal history of the defendant in *Matthews* was not otherwise admitted into evidence, as Petitioner's was in this case. Second, unlike *Matthews*, there was no direct reference to Petitioner being on parole. In fact, at no time was the jury informed that Petitioner was on parole at the time of the offense for which he was on trial. Rather, the jury was provided information from which it could infer that he may have still been on parole at the time of the offense. The reference to Petitioner's parole status was non-specific and made in passing, with no additional attention drawn to it by the Commonwealth or anyone else. The jury did not receive a written copy of the sentencing order including the reference to parole. Moreover, the Court provided a limiting instruction to the jury to explain the permissible purposes for which the jury could consider Petitioner's prior criminal history.

Having found there is no arguable merit to Petitioner's claim about the jury being informed of his parole status, the Court need not reach the reasonable basis or prejudice prongs of the ineffective assistance analysis. Petitioner is not entitled to relief on this claim.

8

## C. _Ineffective Assistance for Failing to Preserve a Claim Regarding Consideration of "Impermissible Factors" at Sentencing_

In his final claim of ineffective assistance, Petitioner alleges that Second Appellate Counsel was ineffective for failing to preserve a claim that the Court considered "impermissible factors" at the time of sentencing. Petitioner relies on a footnote in the Superior Court's memorandum opinion which states, "In the argument section of his brief, [Petitioner] claims that the trial court considered various impermissible factors when fashioning [Petitioner]'s sentence. However, as [Petitioner] failed to raise this issue in the Rule 2119(f) statement, we decline to address it." Sup. Ct. Op., 7/9/2021 at 25, n.8. It is unclear why the Superior Court interpreted Petitioner's appellate brief to complain of "impermissible factors" considered at sentencing because the issue actually raised by Petitioner was whether this Court failed to give adequate consideration to his mental health issues, psychiatric hospitalizations, and rehabilitative needs. In the Amended PCRA Petition and Petitioner's proposed findings of fact and conclusions of law, he identifies the "impermissible factors" as the failure to adequately consider Petitioner's mental health history or rehabilitative needs and the lack of remorse. See Amended PCRA Petition at ¶14 and Petitioner's Proposed Findings at ¶13.

The Superior Court's memorandum opinion explicitly addressed this Court's consideration of Petitioner's mental health issues, frequent psychiatric hospitalizations, rehabilitative needs and lack of remorse. Sup. Ct. Op., 7/9/2021 at 24-29. In doing so, the Superior Court extensively quoted this Court's explanation of the reasons for the sentence placed on the record at the time of sentencing and the Court's written statement of reasons for the sentence imposed pursuant to 18 Pa.C.S.A. § 9721(b). The Superior Court also specifically noted this Court's review of the presentence investigation report ("PSI") and found that this Court took into consideration all relevant mitigating and aggravating factors. Petitioner's claim of ineffective assistance regarding preservation of the so-called "impermissible factors" issue is previously litigated because the Superior Court ruled on the merits that this Court properly considered Petitioner's mental health issues, psychiatric hospitalizations, rehabilitative needs, and lack of remorse. Thus, Petitioner is not eligible for relief. See 42 Pa.C.S. § 9543(a)(3).

Even if the issue had not been previously litigated, Petitioner's claim would fail for lack of arguable merit and resulting prejudice. Regarding arguable merit, the record is clear that the

Court reviewed the case exhaustively, observed Petitioner's demeanor and behavior throughout trial and post-trial proceedings, and addressed all relevant factors, including the ones Petitioner again claims the Court failed to adequately consider. The Superior Court affirmed the sentence after reviewing the record and considering Petitioner's claims that the court failed to adequately consider mental health, rehabilitative needs, and lack of remorse. As to prejudice, there is no reasonable likelihood that the Superior Court would have reversed Petitioner's sentence had the "impermissible factors" argument have been included in Petitioner's 2119(f) statement on direct appeal. The Superior Court thoroughly examined the record and found no abuse of discretion in the sentence imposed by this Court. In fact, raising the issue in the 2119(f) statement would not have changed the Superior Court's analysis at all, given that the Superior Court fully addressed the issue despite claiming in a footnote that it was waived.

Having failed to satisfy all three prongs of the ineffective assistance of counsel analysis and having failed to prove that this issue was not previously litigated, Petitioner's claim of ineffective assistance for failing to preserve a claim regarding consideration of "impermissible factors" is denied.

## ORDER

AND NOW, this _19_ day of _November_, 2024, for the reasons set forth in the accompanying Opinion, Defendant Dennis Lee Hassinger's Amended PCRA Petition is DENIED in its entirety.

BY THE COURT:

_____
Jonathan D. Grine, President Judge